UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM TANG,

    Plaintiff,

v.                                                 Case No. 06-12624
                                                 Hon. Sean F. Cox

HEKMAT HANNA PUTRUSS, et al.,

    Defendants.
_____/

**OPINION AND ORDER**

This matter is before the Court on the parties' Cross-Motions for summary judgment on the Copyright Claim. The parties have briefed the issues. Pursuant to E.D.Mich. LR 7.1, the court declines to hold a hearing. For the following reasons, the Court:

(1)    **GRANTS** in part, and **DENIES** in part, Plaintiff's Motion for partial summary judgment, the Motion is <u>denied</u> with respect to (a) finding of liability and (b) a finding that each photograph constitutes a separate "work," but <u>granted</u> to the extent that (a) Defendant Maria's Collection did not have an implied license to use the photographs on the CDs obtained on August 10, 2005, (b) Defendants are not joint authors of the photographs; (c) Defendants may be liable for statutory damages provided Plaintiff can prove the requisite date of commencement;

(2)    **DENIES** Defendant Putruss and Maria's Collection's Motion for summary judgment as to Count I for Copyright Infringement;

(3)    **GRANTS** in part, and **DENIES** in part, Defendant Putruss and Maria's Collection's

1

Motion for summary judgment as to damages, the Motion is denied to the extent it requests a ruling that "[a]ny alleged infringement by either Defendants...is not entitled to any award of statutory damages," the Motion is granted with respect to a finding that the photographs constitute one "work," the court declines to rule on the issue of willfulness at this time; and

(4)  **DENIES** Defendant Pageantry's Motion for summary judgment.

## I. BACKGROUND

This action arises out of alleged copyright infringement. Plaintiff, Sam Tang, is a photographer doing business as Tang Productions. Defendant Hekmat Putruss is the principal of Maria's Collection, Inc., which sells designer dresses and clothing throughout the United States. Defendant Pageantry publishes a trade magazine circulated in Michigan.

On August 4, 2005, Plaintiff and Defendant Putruss met to discuss a photo shoot for Defendant Maria's Collection's new line of dresses. According to Plaintiff, each photo used by Defendant would show a credit to Plaintiff as the photographer. Plaintiff claims that as part of the agreement, Defendants would pay a deposit to Plaintiff up front, with the remaining balance due when the images were delivered. Plaintiff alleges that after the balance was paid, he was going to issue a license for Defendants to publicly display his images. The parties allegedly agreed that Plaintiff would be paid $4000.00. Plaintiff was given a deposit of $2000.00

The photo shoot occurred on August 7, 2005. During the photo shoot, more images and dresses were used than originally anticipated. According to Plaintiff, the agreement provided for additional fees for the additional hours and dresses. Plaintiff told Defendant he owed him $5050.00.

On August 10, 2005, Plaintiff sent his associates Norman Estigoy and Art Lokar to pick up the remaining balance and give the images to Defendants. According to Plaintiff, Defendant Putruss refused to pay and forcibly took the images which were stored on DVD's. Defendant Putruss was charged with assault and battery against Lokar. He pled no contest.

Prior to filing a civil action, Plaintiff registered the photo images with the U.S. Copyright office, the registration became effective on August 18, 2005. Plaintiff asserts that Defendants publicly displayed his images, without credit to Plaintiff as the photographer. Allegedly, Plaintiff informed Defendant Pageantry that the images were not licensed to Defendant and could not be displayed. Nonetheless, Defendant Pageantry reproduced one of the copyrighted images in its Winter 2005 issue.

On June 14, 2006 Plaintiff filed a Complaint. A First Amended Complaint was filed on September 29, 2006, alleging copyright infringement. Defendants Putruss and Maria's Collection filed an Answer on October 19, 2006. An Amended Answer was filed March 19, 2007. Defendants Putruss and Maria's collection allege several counter claims seeking various forms of relief: (1) declaratory judgment that the copyright registration is invalid; (2) declaratory judgment that Defendant's are a joint owner of any copyrights of the photo images if valid; (3) seeking an accounting of any profits derived from the copyrights; (4) breach of contract and duty of good faith and fair dealing; (5) tortious interference with a business relationship (Pageantry); (6) tortious interference with a business relationship (John Kelvin); (7) violation of the Michigan Consumer Protection Act; (8) false advertising under the Lanham Act; (9) false advertising in violation of Michigan law; (10) civil extortion; (11) violation of 18 U.S.C. § 1962; and (12) violation of MCL § 750.159.

Several motions seeking summary judgment have been filed in this case. On June 7, 2007, Plaintiff filed a Motion for partial summary judgment on his claim of copyright infringement against Defendants. Also on June 7, 2007, Defendants Putruss and Maria's Collection filed two Motions for summary judgment regarding Plaintiff's copyright infringement claim; and if that claim is successful, regarding damages on that claim. Defendant Pageantry also filed a Motion for summary judgment on June 7, 2007.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III. ANALYSIS

Although there are four separate Motions at issue, the resolution of several issues are consistent in each of the Motions. Therefore, those issues will be addressed in turn.

### A. Is Defendant Putruss a Joint Author of the Photo Images?

Defendants argue that Putruss is a joint author of the photo images copyrighted by Plaintiff, based on Putruss' significant contributions to the photographs. "Joint authorship entitles the co-authors to equal undivided interests in the whole work - in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner any profits that are made." *Thomson v. Larson*, 147 F.3d 195, 199 (2nd Cir. 1998).

Under copyright law, a "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).

The parties do not dispute that Defendant Putruss was involved with the photo shoot. The parties agree that Putruss selected the models and the gowns and accessories that would be worn by each model during the photo shoot. [Plf. Mot., p. 3]. Further, Putruss also requested certain poses and made suggestions. *Id*. However, the parties appear to disagree on the extent of Putruss' contributions.

Nonetheless, Plaintiff argues that Putruss cannot be a joint author for two reasons: (1) there is no objective manifestation that both parties intended to be joint authors; and (2) Putruss' contributions preclude a finding of joint authorship because they are not independently copyrightable. Defendants contend that there is no requirement that the contribution be "independently copyrightable" in order to find joint authorship.

Before the Court can analyze the argument set forth by Plaintiff, it must first determine

5

that Plaintiff advances the proper test. There are two competing test for determining whether a contribution rises to the level of joint authorship. One test is the "de minimis" test, set forth by Professor Nimmer, and the other is the "copyrightable subject matter" test, set forth by Professor Goldstein. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1069 (7th Cir. 1994). The fundamental difference between the two tests is that the de minimis test requires only the combined product of joint efforts must be copyrightable; the copyrightable subject matter test requires that each author's contribution be independently copyrightable. *Id*. The Seventh Circuit evaluated both tests in *Erickson*, and determined that the copyrightable subject matter test better promoted the primary objective of the Copyright Act:

> The copyrightability test advances creativity in science and are by allowing for the unhindered exchange of ideas, and protects authorship rights in a consistent and predictable manner. It excludes contributions such as ideas which are not protected under the Copyright Act. This test also enables parties to predict whether their contributions to a work will entitle them to copyright protection as a joint author. Compared to the uncertain exercise of divining whether a contribution is more than de minimis, reliance on the copyrightability of an author's proposed contribution yields relatively certain answers. The copyrightability standard allows contributors to avoid post-contribution disputes concerning authorship, and to protect themselves by contract if it appears that they would not enjoy the benefits accorded to authors of joint works under the Act.

*Erickson*, 13 F.3d at 1071 (internal citations omitted).

The Sixth Circuit has not ruled on which test is to be applied in this Circuit. However, the *Erickson* court pointed out that the copyrightable subject matter test has been adopted, in some form, by a majority of the courts that have considered the issue. *Id*. at 1070-1071, n.8 (citing cases). Further, two district courts within the Sixth Circuit have elected to follow the copyrightable subject matter test. See *Balkin v. Wilson*, 863 F.Supp. 523, 528 (W.D.Mich. 1994)(citing *Erickson, supra*); and *Perry v. Herd*, 2006 WL 335522 *17 (E.D.Tenn. 2006).

Accordingly, this Court will apply the copyrightable subject matter test as set forth in *Erickson*. In order for Defendants to assert the "joint authorship" defense to Plaintiff's claim for copyright infringement, Defendants must establish: (1) that the parties intended to be joint authors at the time the photo images were taken; and (2) Defendants' contributions were independently copyrightable. *Erickson*, 13 F.3d at 1071.

### Did the parties intend to be joint authors at the time the photo images were taken?

The parties dispute whether they intended to be joint authors. In *Thomson, supra*, the Second Circuit articulated the inquiry for determining whether there is objective evidence of an intent to be joint authors. The court noted that the requirement of intent is designed to "strike a balance between ensuring that true collaborators in the creative process are accorded the perquisites of co-authorship, while at the same time, guarding against the risk that a sole author is denied exclusive authorship status simply because another person renders some form of assistance." *Thomson*, 147 F.3d at 200 (quoting *Childress v. Taylor*, 945 F.2d 500, 507-508 (2nd Cir. 1991). In *Thomson*, to determine whether there was an intent to be co-authors, the court considered: (1) how the parties regarded themselves in relation to the work; (2) the contributor's decisionmaking authority; (3) agreements with third parties; and (4) other additional pertinent evidence. The court noted "contribution even of significant language to a work does not automatically suffice to confer co-author status on the contributor...a specific finding of mutual intent remains necessary." *Thomson*, 147 F.3d at 202 (citation omitted).

There are two helpful cases regarding copyright co-authorship in the context of photographers. First, in *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F.Supp.2d 301 (S.D. N.Y.

7

2000), the court found that the defendant frame manufacturer was not a joint author of photos taken by a photographer hired to take photos of framed mirrors. In *SHL Imaging*, prior to taking the photographs, the plaintiff photographer solely selected the camera, lenses, film type, paper type, diffusers, reflectors and lighting equipment. The plaintiff arranged both the lighting and the staging of the frames. The defendant asserted that he instructed the plaintiff on how he wanted the photographs taken, including the positioning and angle and appropriate lighting, but provided no specifics. The court held that the defendant's selection of the subject matter and right to control the developed photographs were not indicative of an intent to be joint authors. Noting that the defendant did not offer evidence that the parties intended to share credit for the photographs; jointly register the photographs; or affix a copyright notice on the work, the court found that the defendant was not a joint author.

In *Brod v. General Publishing Group, Inc.*, 32 Fed.Appx. 231 (9th Cir. 2001), the court found that the parties were joint authors. The plaintiff photographer was asked by the defendant to take photographs of vintage televisions for a book he planned to publish. Based on the extent of the defendant's artistic control, the court found he was a co-author. The defendant came up with the idea, procured the televisions, arranged the composition for each shot, directed the plaintiff to make changes to the camera angles, and enhanced the images. Further, before the plaintiff triggered the shutter, the defendant "viewed a preliminary Polaroid test photograph of each image and made suggestions regarding any changes he thought appropriate." *Id*. at 233. The defendant "gave final approval of both positioning of the subject matter and the camera angle before [the plaintiff] triggered the shutter in each photograph." *Id*. at 235. The court found that *under those circumstances*, the defendant exercised sufficient artistic control to be

considered a co-author. *Id*. at 235.

Additionally, the *Brod* court found that there was an objective manifestation of the intent to be co-authors because the plaintiff deferred to the defendant, indicated the pictures were for a "t.v. book," and listed the completion date in the copyright registration as the date the book was completed, rather than when the photographs were taken.

In this case, Plaintiff's certificate of registration indicating he is the sole author is prima facie evidence of sole authorship, Defendants bear the burden of overcoming this statutory presumption. *SHL Imaging*, 117 F.Supp.2d at 314 (citing 17 U.S.C. § 410(c)).

With respect to the level of artistic control exercised by Defendant, the circumstances of this case are closer to the *SHL Imaging* case than the *Brod* case. The parties do not dispute that Defendant offered suggestions, and that Plaintiff incorporated Defendant's suggestions. But, Defendant does not appear to have exercised a high degree of control in the actual taking of the photographs, like that of the defendant in *Brod*. The deposition testimony of the models provided by Defendants indicates that Defendant Putruss, and his two sons, were responsible for dressing the models, choosing their accessories, and directing the hair and makeup stylists. [Exhibits C and D]. However, all of this pertains to the subject matter of the photos, not the taking of the photos themselves.[1] "Mere selection of the subject matter to be photographed does

---

[1] Although Defendants cite *Brod* for the proposition that "it has long been established that copyrightable expression includes selecting and arranging the subject matter, deciding on the composition and camera angles of the photograph, and determining the lighting as well as when to take the photograph," this statement refers to determining whether something is a copyrightable contribution, not whether there was an intent to be a joint author. *Brod*, 32 Fed.Appx. at 234. Moreover, while Putruss and his sons selected the subject matter, and requested some photos from a low angle; it is undisputed that Plaintiff decided when to take the photographs and the lighting.

9

not create joint authorship." *SHL Imaging*, 117 F.Supp.2d at 315. It is undisputed that Plaintiff is the only person who took the photographs, supplied all of the photographic equipment, and arranged the lighting. Defendants fail to demonstrate that they had sufficient artistic control over the photo shoot to entitle them to be considered a joint author on the resulting photographs.

Defendants also fail to demonstrate objective indicia of an intent to be joint authors. The contract between the parties, which is essentially just an invoice, does not indicate who is to have authorship over the photo images. [Defs Putruss Mot. Exhibit A]. However, the contract makes it clear that the CD or DVD's created from the shoot will be delivered when payment is received. *Id*. The fact that Defendants were required to pay before they could receive the images, and conversely that Plaintiff could withhold the images, indicates that the parties did not intend to be joint authors. In Defendant Putruss' deposition he stated that it was his understanding that when he paid the money, he could use the photos. [Defs Resp. Plf Mot. Exhibit A, p.43]. If the parties intended that the rights to the photographs would be jointly held, Plaintiff would not be able to withhold them pending payment. Further, Plaintiff obtained a copyright registration, in his name only, shortly after the photo shoot. Defendant Putruss never made any attempts to copyright the photographs. Plaintiff also alleges that he contacted third parties, *i.e.* Defendant Pageantry and John Kelvin, to inform them that Defendant was not authorized to use the photos. This does not indicate an understanding that the works were joint.

Because Defendant does not establish artistic control or demonstrate an objective intent to be joint owners, the court does not need to reach the question of whether Defendant's contributions are independently copyrightable.

Accordingly, Defendant Putruss fails to establish that he is a joint owner of the copyright

in the photo images.

### B. Does Defendant Putruss Have an Implied License to Use the Photo Images?

In the alternative, Defendants argue that Putruss has an implied license to use the photo images because Plaintiff delivered the initial CD containing photographs, and Defendants obtained the remaining two CDs.

An implied license will only be found in narrow circumstances where "one party created a work at the other's request and handed it over, intending that the other copy and distribute it." *SHL Imaging*, 117 F.Supp.2d at 317 (citing *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21, 25 (2nd Cir. 2000)). There is no dispute that Plaintiff created the photo images at Defendants' request, and the intent was for Defendants to copy and distribute them. However, with the exception of the first CD that contained approximately one third of the photo images, Plaintiff did not "hand over" the remaining two CDs. Defendant Putruss forcibly took the CDs and was subsequently charged with assault. Additionally, Defendant only paid $2000 of the initial $4000 contract price.[2] Accordingly, the court will not imply a license where the work was involuntarily taken from the author, with respect to the CDs taken from Plaintiff. But, there is an implied license with respect to the images on the first CD given to Putruss at the photo shoot. Those images were voluntarily given to Defendants and at least a portion of the contract price had been paid.

Therefore, Defendants are entitled to a finding of summary judgment on Plaintiff's claim of copyright infringement with respect to the photo images on the first CD, but not on the two

---

[2]Plaintiff asserts that $5,050.00 was outstanding at the completion of the photo shoot, rather than $2000, due to additional time and photos.

CDs taken by Putruss. The parties do not indicate which photo images were involved in the alleged copyright infringement.

    C.    **Is Defendant Pageantry an Innocent Infringer?**

Assuming that Defendants did infringe by using the photo images forcibly taken from Plaintiff, Pageantry claims it is an innocent infringer pursuant to 17 U.S.C. § 504(c)(2):

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. * * *

However, if the notice of copyright appears on the copies, then the "innocent infringer" defense is inapplicable. 17 U.S.C. § 401(d).

The parties dispute whether Plaintiff informed Carl Dunn, the President of Pageantry, that Defendants did not have authorization to use the copyrighted images. Dunn testified during deposition that Tang called him and all he said was "don't run anything for Harry." [Pag. Mot. Exhibit D, p.3]. Dunn claims there was no indication, either from Plaintiff or from a visible copyright notice, that there was a copyright problem with the photographs contained in the advertisements sent from Maria's Collection to Pageantry for publication. *Id*. at 5.

Plaintiff testified during his deposition that he told Dunn that Putruss stole the DVDs and "there could be a potential problem with copyright infringement of the images." Pag. Mot. Exhibit F, p.185].

Because there are disputed facts regarding whether Pageantry, through Plaintiff's conversation with Dunn, had reason to know of the alleged copyright infringement, the Court

cannot grant either party summary judgment on this issue.

### D. Damages

The Court cannot assess damages against Defendants because it is unclear what photo images were used, and because Defendants have a remaining claim asserting invalidity of the copyright. Nonetheless, because the issues raised by the parties with respect to damages are not likely to resolve, and may affect settlement, the Court will rule.

#### 1. Are Plaintiff's photographs one "work" for purposes of calculating damages?

Copyright owners are entitled to damages for each infringement with respect to any one work. 17 U.S.C. § 504(c)(1). However, the Copyright Act does not define what constitutes a "work." Thus, the parties dispute whether Plaintiff's photographs as a whole constitute one work, or whether each individual photograph constitutes a separate work, entitling Plaintiff to several awards of statutory damages.

It is undisputed that Plaintiff's photographs are all registered on a single copyright. [Plf Response, Exhibit 6]. Plaintiff identified the title of the work as "Putros Couture." *Id*. The photographs are not individually listed. *Id*.

The Sixth Circuit has not indicated what analysis courts are to use in determining whether a group of photographs constitute a single work. However, the issue has been dealt with in other circuits. In *Walt Disney Company v. Powell*, 897 F.2d 565, 569 (D.C.Cir. 1990), the court held that separate copyrights do not constitute distinct works unless they can "live their own copyright life." Under that analysis, where separate copyrights have no economic value, regardless of their artistic value, they must be considered part of a single work. *Id*. In *Walt Disney*, the court found

that the defendant, who was selling six shirts depicting Minnie and Mickey Mouse in different poses, only infringed two of Disney's works because each shirt was essentially the same and only the poses varied:

> While Mickey and Minnie are certainly distinct, viable works with separate economic value and copyright lives of their own, we cannot say the same is true for all six of the Disney copyrights of Mickey and Minnie in various poses which the district court found to be infringed in this case. Mickey is still Mickey whether he is smiling or frowning, running or walking, waving his left hand or his right. Thus, we find that Powell's mouse-face shirts infringed only two of Disney's works.

*Walt Disney*, 897 F.2d at 570.

In *Playboy Enterprises, Inc. v. Sanfilippo*, 1998 WL 207856 (C.D.Cal. 1998), the court found that a group of photographs were separate works for purposes of calculating damages. In *Playboy*, the infringer copied thousands of copyrighted images from Playboy, which he offered for sale via a website. The court found that the plaintiff was entitled to statutory damages for each image:

> ...the Court finds that each one of these images has an 'independent economic value' and is viable on its own. As plaintiff's counsel represented, although each of these images may have appeared in a singular issue of one of plaintiff's copyrighted publications, these images are subject ot re-use and redistribution in accordance with various licensing arrangements. Furthermore, each image represents a singular and copyrightable effort concerning a particular model, photographer, and location. The fact that many of these images appeared together should not detract from the protection afforded to each individual effort. Furthermore, defendant marketed each one of the images separately.

*Playboy*, 1998 WL 207856, *1355-1356. This is in contrast with the holding in *Coogan v. Avnet, Inc.*, 2005 WL 2789311 (D.Ariz. 2005), where, citing to the *Playboy* case, the court found that a group of photos made up a single work for purposes of calculating damages. In *Coogan*, the plaintiff was a professional photographer hired to take photos of the CEO, Roy Vallee, of the

defendant company. The license only allowed the defendant to use a single photograph one time. The defendant used more than one photograph for more than one occasion. The court found that the photographs constituted one work:

> Unlike the photographs at issue in *Playboy*, the Vallee photographs were the subject of a single license agreement. Unlike the photographs at issue in *Playboy*, the Vallee photographs involved a single subject, a single photographer and a single location. Unlike the photographs at issue in *Playboy*, there is no evidence in the record that Plaintiff marketed the images to the public separately. Rather the photographs were taken at a single session, by a single photographer, for a single purpose.

*Coogan*, 2005 WL 2789311, *6.

In this case, the photographs taken by Plaintiff constitute a single work for purposes of calculating damages. Regardless of any artistic value, the photographs of models wearing Defendants' dress line is of no economic value to Plaintiff. Further, similar to the photographs in *Coogan*, the photographs were taken at a single session, by a single photographer, for a single purpose. The only purpose for the photographs is to advertise the "Putros Couture" clothing line.

Accordingly, if Plaintiff establishes liability for copyright infringement, he is only entitled to collect one award of statutory damages for the photographs as a whole, rather than for each individual photograph.

### 2. Is Plaintiff entitled to seek statutory damages?

Defendants argue that Plaintiff cannot seek statutory damages under 17 U.S.C. § 504(c), because the alleged infringement occurred prior to the registration date of the copyright. Section 504(c) provides:

(c) Statutory Damages

(1) Except as provided by clause (2) of this subsection, the copyright owner may

elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. * * *

17 U.S.C. § 412 provides:

In any action under this title, other than an action brought for violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(b), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for -

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

Defendants contend that the infringing commenced prior to an August 17, 2005 trade show, and thus, Plaintiff cannot seek statutory damages because the registration is dated August 18, 2005. To the extent that Plaintiff can establish separate infringements commencing after August 18, 2005, and/or infringements for which both Defendants are jointly liable after August 18, 2005, he is able to seek statutory damages. However, "infringement commences for the

purposes of § 412 when the first act in *a series of acts constituting continuing infringement* occurs." *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998)(emphasis added).

### 3. Was Defendants' infringement willful under 17 U.S.C. § 504(c)(2)?

Defendants argue that any alleged infringement was not willful. In *Princeton University Press v. Michigan Document Services*, 99 F.3d 1381, 1392 (6th Cir. 1996)(citation omitted), the court stated:

> In other contexts willfulness might simply mean an intent to copy, without necessarily an intent to infringe. It seems clear that as here used, willfully means with knowledge that the defendant's conduct constitutes copyright infringement. Otherwise, there would be no point in providing specially for the reduction of minimum awards in the case of innocent infringement, because any infringement that was nonwillful would necessarily be innocent. This seems to mean, then, that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes.

The Court declines to rule at this time on whether Defendants' alleged infringement was willful.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** in part, and **DENIES** in part, Plaintiff's Motion for partial summary judgment, the Motion is <u>denied</u> with respect to (a) finding of liability and (b) a finding that each photograph constitutes a separate "work," but <u>granted</u> to the extent that (a) Defendant Maria's Collection did not have an implied license to use the photographs on the CDs obtained on August 10, 2005, (b) Defendants are not joint authors of the photographs; (c) Defendants may be liable for statutory damages provided Plaintiff can prove the requisite date of commencement;

(2) **DENIES** Defendant Putruss and Maria's Collection's Motion for summary judgment as to Count I for Copyright Infringement;

(3) **GRANTS** in part, and **DENIES** in part, Defendant Putruss and Maria's Collection's Motion for summary judgment as to damages, the Motion is denied to the extent it requests a ruling that "[a]ny alleged infringement by either Defendants...is not entitled to any award of statutory damages," the Motion is granted with respect to a finding that the photographs constitute one "work," the court declines to rule on the issue of willfulness at this time; and

(4) **DENIES** Defendant Pageantry's Motion for summary judgment.

**IT IS SO ORDERED.**

        **S/Sean F. Cox**
        **Sean F. Cox**
        **United States District Judge**

**Dated: October 5, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on October 5, 2007, by electronic and/or ordinary mail.**

        **S/Jennifer Hernandez**
        **Case Manager**